UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| CASHELL FURRY ON BEHALF OF MINOR CHILD, SAR | CIVIL ACTION |
|---|---|
| VERSUS | NO: 09-6386-SSV-SS |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | |

## REPORT AND RECOMMENDATION

Plaintiff, SAR, by and through her next friend and mother, Cashell Furry ("Ms. Furry"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(c).

## PROCEDURAL HISTORY

On August 16, 2006, Ms. Furry submitted an application on behalf of SAR. R. 73-75. The alleged disability began on March 1, 2006. R. 73. She reported that SAR hurt her back while attempting a backbend at school in October, 2005. R. 91. On December 4, 2006, the Social Security Administration (SSA) determined that SAR had a severe impairment, but her condition did not meet, equal or functionally equal a listing. R. 47-48. On April 18, 2008, there was a hearing before an Administrative Law Judge ("ALJ"). SAR and Ms. Furry testified at the hearing. R. 31-46. On May 29, 2008, the ALJ issued an unfavorable decision. R. 15-30. On August 24, 2009, the Appeals Council denied the request for review. R. 1-3. On September 21, 2009, Ms. Furry filed a complaint on behalf of SAR. Rec. doc. 1. The parties filed cross-motions for summary judgment. Rec. docs.

12 and 13.

## STATEMENT OF ISSUE ON APPEAL

Ms. Furry's request for judicial review raises the following issue:

Issue: Do the additional materials submitted to the Appeals Council support the conclusion that SAR has a marked limitation in moving about and manipulating objects, and therefore her condition functionally equaled a Listing under Section 101.04 Disorders of the spine?

## THE ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. SAR was born in 1994. She was an adolescent on August 8, 2006, the date the application was filed, and was an adolescent at the time of the ALJ's decision on May 29, 2008 (20 C.F.R. 416.926a(g)(2)).

2. SAR had not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. 416.924(b) and 416.972).

3. SAR had the following severe impairments: disorders of the back (discogenic and degenerative) and "mood disorders" (20 C.F.R. 416.924(c)).

4. SAR did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.025 and 416.926).

5. SAR did not have an impairment or combination of impairments that functionally equaled the listings (20 C.F.R. 416.924(d) and 416.926a).

6. SAR had less than a marked limitation in moving about and manipulating objects; and a marked limitation in health and physical well-being.

7. SAR was not disabled, as defined in the Act, since the date of the application (20 C.F.R. 416.924(a)).

R. 18-24.

## ANALYSIS

a. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

The issue is whether SAR is "disabled" under the definition found in 42 U.S.C. § 1382c(a)(3)(C)(i) which states:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months.

Id. The regulations thereunder mandate the following three step analysis:

> We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a).

b.   Testimony at Hearing.

SAR testified that in October 2005, she hurt her back doing a backbend in a cheerleader tryout. R. 38. She felt something pop or crack. R. 38. After that she could not: (1) twist or pick up certain things (R. 39); (2) play softball (R. 41); or (3) help her mother in the garden as much as she had (R. 42). She had problems paying attention in school. R. 42. She went shopping with her mother about once a month. R. 43. She went to a chiropractor and took Ibuprofen. R. 39. She experienced back spasms which had become more frequent. R. 39-40. They occurred mostly at night. Shortly before the hearing she had experienced one in school. R. 40. She missed a lot of school as a result of the back problems and migraine headaches. R. 40. She got migraine headaches about once every month. R. 41. When she became nauseous and sick to her stomach, she could not stay at school. R. 41. She took Imitrex for headaches. R. 36.

SAR was in the eighth grade at Evergreen Junior High. R. 35. For 2007, she had a B in reading and C's in all other subjects. R. 35. For 2006, she had B's and C's. R. 35-36. She took

4

care of her dog. R. 36. She helped her mother clean and work in the kitchen. R. 36. She bathed and dressed herself. R. 36. She did not have any behavioral problems. She got along with her teachers, and she had a lot of friends. R. 37. She did not participate in physical education. R. 37-38.

Ms. Furry testified that SAR's laminectomy surgery was scheduled for July 3, 2008 at Children's Hospital. R. 44-45. The diagnosis was spinal stenosis. R. 44. The recuperative period was expected to be three to five months. R. 44. The surgery was not guaranteed to stop the pain. R. 44. She missed about 20 days of school because of pain and muscle spasms. R. 46.

c.  Education Records.

SAR's composite score was in the mid-range or 50 percentile rank on a March 2005 Iowa test of basic skills. R. 104. For the nine weeks ending May 26, 2006, her grade report revealed one A, four B's, a C in science and a F in math. She was promoted to the seventh grade. R. 128. As of August 11, 2006, SAR had two unexcused absences on August 9 and 10, 2006. R. 140. As of November 10, 2006, she had C's and one B in course work. R. 109. She also had 29 partial or complete absences. R. 102. It was noted that she could do much better work in reading and science and she talked too much in class. R. 127. For January 8, 2007, she had one B, several C's and two D's. R. 131-32.

On November 28, 2006, SAR's life science teacher completed a questionnaire. SAR had been with the teacher for four months. The teacher had not observed any problems in: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; and (5) caring for herself. The teacher did not observe any physical or mental condition concerning SAR. R. 108-115.

5

On August 5, 2008, a homebound teacher reported that SAR was unable to attend school because of "spine disease." She was expected to be out of school for the entire school year (August 2008 - May 2009). R. 147-150. A February 12, 2009 report indicated that SAR remained as a homebound student. She had A's and B's. R. 151-53.

d. Medical Evidence.

SAR's pediatrician was R. Mark Sayes, M.D. On January 10, 2005, she was seen by him for multiple contusions after having been jumped by three teenagers. There was an x-ray of her left elbow. Motrin was prescribed. She was to return in one week. R. 241. On January 17, 2005, she returned for a follow-up visit. She reported pain in her right shoulder. R. 240. On February 21, 2005, she reported migraine headaches. R. 242. A CT scan of the head was normal. R. 233. On April 22, 2005, she reported migraines, nausea, stomach pain and fever. Medication was prescribed. R. 261. On August 15, 2005, she reported sore muscles all over her body. She reported doing a lot of physical activities. R. 260. On October 11, 2005, she complained of severe migraine headaches. Her medication was working, but she needed refills. R. 259. On October 28, 2005, she was treated for a boil. R. 258. On November 4, 2005, she reported fever and coughing. R. 256. On November 23, 2005, she reported abdominal pain, vomiting and diarrhea. R. 255. On January 4, 2006, she reported coughing, congestion and diarrhea. R. 254. On January 6, 2006, she returned with complaints of stomach pain. R. 253. On February 13, 2006, she was seen for a sore on her face. R. 252.

On March 10, 2006, she returned to Dr. Sayes and reported having a headache for the last three months. She took Tylenol for the pain. The pain became worse with walking and prolonged standing. She reported pain since doing a backbend at school. R. 251. On March 15, 2006, she

reported recurrent back pain. R. 246. On March 14, 2006, there was a CT Scan of the thorax and lumbar spine. There was a moderate to moderately large disc bulge at the L2-3 level which resulted in moderate central spinal stenosis. At L3-4, L4-5 and L5-S1 there was mild to moderate spondylosis. R. 164-65. On March 16, 2006, there was a follow-up visit with Dr. Sayes. R. 250. A March 20, 2006 MRI revealed a diffuse disc bulge at L2-3 with a central extrusion that extended superiorly behind the L2 vertebrae with significant canal stenosis. R. 160 and 163. On March 24, 2006, she returned to Dr. Sayes for the results of the MRI. R. 249. On March 24, 2009, she was seen by Richard G. Mora, M.D., on a referral from Dr. Sayes for treatment of a methicillin-resistant strain of staph abscesses of the jaw and underarm. R. 227.

On March 16, 2006, SAR was a seen at Children's Hospital for her back pain on a referral from Dr. Sayes. R. 159. William K. Accousti, M.D., an orthopedist, started her on conservative treatment with physical therapy and a lumbar corset. R. 158. On April 3, 2006, SAR returned to Dr. Sayes for a check-up. R. 248. On April 28, 2006, she reported to Dr. Sayes that the lumbar corset was not helping with the pain. R. 247. On May 9, 2006, Andrew G. King, M.D., an orthopedist at Children's Hospital, saw SAR. He recommended against surgery at that time. He asked her to return in six months. R. 155.

On May 19, 2006, SAR returned to Dr. Sayes for recurrent boils. R. 245.

On October 17, 2006, SAR was seen by Patrick J. Dowling, M.D., a psychiatrist, on a referral from Dr. Sayes for a "Meadowridge Evaluation".[1] The diagnosis was post-traumatic stress syndrome and depression. Major depression was ruled out. R. 184. Medication was prescribed. R. 183.

---

[1] The copy of the evaluation in the record is incomplete. R. 224. The evaluation was included in medical records from the office of Dr. Sayes. R. 195-241.

On October 30, 2006, SAR returned to Dr. Sayes with complaints of sore throat, fever, nasal drip, coughing and congestion. R. 244.

On November 16, 2006, SAR was seen for a consulting psychological evaluation by Clarence M. Bergeron, Ph.D. R. 185-88. SAR's mother reported that SAR suffered from migraines and back pain and was depressed. SAR was cooperative; her thought processes were normal; she denied delusions, hallucinations or suicidal ideation; she did not seem to be depressed; she did not have major depression; she had some mildly impaired ability to concentrate; her estimated intelligence was in low average range; and she had a rather limited general fund of information. Dr. Bergeron recommended: (1) continued counseling between SAR and her mother; and (2) evaluation for a possible learning disorder. He indicated that the use of anti-depressants should be questioned by her physician and her mother. R. 185-88.

A childhood disability evaluation form was completed by consultants for the SSA. They found that SAR's impairments were severe, but did not meet, medically equal or functionally equal the listings. R. 189-94.

On January 12, 2007, SAR returned to Dr. Sayes for a refill on her medication. R. 199. On February 5, 2007, she returned to Dr. Sayes with complaints of coughing. R. 198. On February 7, 2007, she was seen by Dr. Sayes for a non-displaced fracture of the left second finger. R. 197 and 229. On February 27, 2007, she was seen by Dr. Sayes for migraine headaches. R. 196.

On May 6, 2008, Dr. King reported that SAR had a relapse of severe back pain. She had missed a lot of school. Medication was prescribed. Her surgery was reset for June. R. 263. On June 17, 2008, she underwent a L2-3 decompression and translaminar interbody fusion. She was in stable condition at discharge. Her physical activities were limited. Medication was prescribed. She was

8

to return in seven to ten days. R. 270-71.

On January 8, 2009, Dr. King prescribed physical therapy (three sessions per week for six weeks for a total eighteen sessions) to strengthen her back. Rec. doc. 12-Attachment 1 at 10.

The PT records for the initial evaluation on January 27, 2008 and the first ten sessions through February 18, 2009 were submitted to the Appeals Council. A re-evaluation was scheduled for April 28, 2009. The reports on the re-evaluation and the remaining PT sessions were not submitted to the Appeals Council. Rec. doc. 12 - Attachment 1 and 2.

On January 27, 2009, the therapist noted that SAR was allowed to return to school part time. She was not able to lift or carry anything heavy; she could not bend from the waist without pain; she had to proceed slowly while dressing and bathing; she could not do any recreational activities; she could not stand or sit for more than about one hour; and with activity her back pain was a nine on a ten point scale. Id. at 8. SAR completed a questionnaire and reported that: (1) her symptoms prevented her from walking more than 1/4 mile; (2) she could do her usual work but no more; (3) her personal care required slow, concise movements due to increased symptoms; (4) she had no trouble sleeping; (5) she could not do any recreational or sports activities; (6) she could drive a car or travel as long as she wanted with slight symptoms; (7) she could not lift heavy weights but managed light to medium weights; (8) she could squat fully without the use of her arms for support; and (9) she could not sit in any chair as long as she liked but could sit in her favorite chair for as long as she liked. Id. at 12. In a further questionnaire she was asked to indicate the sentences which described her situation. For example, she checked off: (1) I stay at home most of the time because of my back; (2) I find it difficult to get out of a chair because of my back; and (3) I stay in bed most of the time because of my back. Id. at 13.

The functional comments at the end of the first session on January 28, 2009 remained unchanged through the February 6, 2009 session. Id. at 2 and 4; and Rec. doc. 12 - Attachment 1 at 24 and 26. On February 9, 2009, the therapist noted that SAR did better with all exercises, but had increased difficulty with one exercise. SAR and Ms. Furry reported that she was now able to stand for up to fifteen minutes before having to sit secondary to pain. SAR complained of dizziness when she stood up too quickly. Rec. doc. 12 - Attachment 1 at 22. On February 11, 2009, the exercises were increased to ten repetitions and one exercise was added. Id. at 20. On February 13, 2009, some features were added to the program but she struggled with one exercise. SAR reported that she thought she was bending over too much which was causing back pain. The therapist reviewed proper body mechanics and posture. Id. at 18. The observations remained about the same for February 16, 2009. Id. at 16. On February 18, 2009, the therapist reported that SAR was making good progress toward established goals and her response to the PT intervention was good. The therapist described moist heat treatments and reported that SAR could not tolerate one exercise due to increased pain. The functional observations were unchanged from the previous session. Id. at 15.

d. Plaintiff's Appeal.

Issue. Do the additional materials submitted to the Appeals Council support the conclusion that SAR has a marked limitation in moving about and manipulating objects, and therefore her condition functionally equaled a Listing under Section 101.04 Disorders of the spine?

The issue arises at the third step of the three step evaluation to determine if a child is disabled and eligible for SSI benefits. 20 C.F.R. § 416.924. At step three the Commissioner determines whether the child's impairments meet, medically equal, or functionally equal the listing and duration requirements. Id. at § 416.924(d)(1). Because SAR was under age eighteen at the time of the ALJ's decision, disability is established if there is a marked limitation in two domains or an extreme

limitation in one domain. Id. at § 416.926a. The ALJ found that: (1) SAR had a marked limitation in health and physical well-being; and (2) she had a less than marked limitation in moving about and manipulating objects. R. 28-29.

In this appeal, Ms. Furry focuses on SAR's back injury. Rec. doc. 12 at 1. She contends that:

> [T]he additional material supplied to the Appeals Council after SAR's surgery supports a conclusion that she also has a marked limitation in moving about and manipulating objects, thereby functionally equaling the listings.

Id. at 8. She contends that, pursuant to 20 CFR § 416.926a(j)(2)(v) and relative to the domain of moving about and manipulating objects, SAR should be able to: (1) use her motor skills freely and easily to get about school, the neighborhood, and the community; and (2) participate in a full range of individual and group physical fitness activities. Rec. doc. 12 at 8-9. She contends that the additional evidence demonstrates that SAR has a marked limitation in the domain. Id. at 9. The Commissioner urges that the physical therapy records support the ALJ's determination that SAR has a less than marked limitation in the domain. Rec. doc. 13 at 6-7.

The regulations provide that:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 CFR § 416.926a(e)(2).

> As an adolescent, you should be able to use your motor skills freely and easily to get about your school, the neighborhood, and the community. You should be able to participate in a full range of individual and group physical fitness activities. You

should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard.

20 CFR § 416.926a(j)(2)(v). The regulations list the following examples of limited functioning in moving about and manipulating objects:

1. You experience muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (e.g., you unintentionally drop things).

2. You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.

3. You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).

20 CFR § 416.926a(j)(3)(i-iii).[2] The regulations state that these examples do not necessarily describe a marked limitation. Id.

After reviewing the regulations and the examples cited in them, the ALJ concluded that SAR had a less than marked limitation in the domain. R. 28. The ALJ stated that:

The claimant does not have any deformities but she has been advised by her doctors not to engage in sports activities. Although the claimant dresses out, she does not participate in physical education activities. She cannot help as much as before in the gardening.

R. 28. As of the date of the ALJ's decision, there was substantial evidence to support the finding. She bathed, dressed and groomed herself. R. 36. She took care of her dog, and helped her mother with the cleaning and in the kitchen. R. 36.

When it denied Ms. Furry's request for review on August 24, 2009, the Appeals Council

---

[2] The regulations list other examples, but these are associated with fine motor skills. There is no evidence that SAR has limitations in her fine motor skills.

reported that it considered the additional evidence submitted by her.[3] It found that the information did not provide a basis for changing the ALJ's decision. R. 1-2. The regulations provide that:

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.

20 C.F.R. § 416.1470(b). The Commissioner does not urge that the additional evidence did not relate to the period before the ALJ's decision on May 29, 2008. Instead, the Commissioner contends that this evidence supports the ALJ's finding that SAR had a less than marked limitation in the domain. Rec. doc. 13 at 7.

On January 27, 2009, SAR was described by the physical therapist as having excellent rehab potential to reach the established goals. In the first part of the functional index work sheet, SAR answered questions on five categories: walking; work; personal care; sleeping; and recreation/sports. For sports/recreation she answered that she could not do any at all. For three of the categories (walking, work and personal care) she chose answers which were in the middle of the range of options, for example "I can only do my usual work, but no more." Rec. doc. 12 Attachment 1 at 11. For sleeping she reported no trouble at all. For the portions of the functional index directed at the lumbar upper and lower extremities, her answers fell in the mid or upper range of responses. For example with respect to driving, she checked, "I can drive my car for travel as long as I want with slight symptoms." Id. at 12. With the exception of the answer on recreation and sports, none of her responses fell at the bottom range. The fact that her responses fell in the middle range supports the

---

[3] The evidence included: (1) Dr. King's report of May 6, 2008 that SAR had a relapse of severe pain and the surgery would be moved up to June (R. 263); (2) the records from Children's Hospital of the June 17, 2008 surgery (R. 270-71); (3) the referral by Dr. Sayes for SAR to have homebound school in 2008-2009 (R. 147); (4) Dr. King's January 8, 2009 prescription for physical therapy (Rec. doc. 12 - Attachment 1 at 10); and the physical therapy records for January and February, 2009 (Rec. doc. 12 - Attachments 1 and 2).

ALJ's finding that SAR did not have a marked limitation in the domain.

By February 2009, she had recently returned to school part time after having been in a home school program. On February 9, 2009, SAR reported that she was able to stand for up to fifteen minutes before having to sit because of pain. Rec. doc. 12 - Attachment 1 at 22. On the last physical therapy session on February 18, 2009, the therapist reported that SAR's progress toward the established goal was good and her response to the PT intervention was good. Id. at 15. The post January 27, 2009 physical therapy reports also support the finding that SAR did not have a marked limitation in the domain.

There is substantial evidence to support the ALJ's finding. Ms. Furry's appeal is a request that the court re-weigh the evidence and substitute its judgment for the Commissioner's. This is not permitted. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Commissioner's cross-motion for summary judgment (Rec. doc. 13) be GRANTED, and plaintiff's motion for summary judgment (Rec. doc. 12) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en*

*banc*).

New Orleans, Louisiana, this 24th day of May, 20010.

**SALLY SHUSHAN**
**United States Magistrate Judge**