UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CASHELL FURRY, ON BEHALF OF                     CIVIL ACTION
MINOR CHILD SAR


VERSUS                                          NO: 09-6386


MICHAEL J. ASTRUE,                              SECTION: R(1)
COMMISSIONER OF SOCIAL
SECURITY


**<u>ORDER AND REASONS</u>**

Before the Court are the objections of plaintiff Cashell
Furry, on behalf of her minor child, SAR, to the Magistrate
Judge's report and recommendation that the final decision of the
Social Security Administration (SSA) Commissioner, defendant
Michael J. Astrue (Commissioner), be affirmed.[1]  The Court,
having considered the record as well as Furry's supplemental
objections,[2] finds that substantial evidence supports the
Commissioner's decision and AFFIRMS the Magistrate Judge's report
and recommendation.

---

[1]     (R. 15.)

[2]     (R. 16.)

## I.    BACKGROUND

Furry filed an application for Supplemental Security Income (SSI) on behalf of SAR on August 16, 2006.[3]  Furry claims SAR's alleged disability began on August 8, 2006 as a result of a back injury SAR sustained at cheerleading practice in October 2005.[4] The SSA denied Furry's application on December 4, 2006, concluding that "[a]lthough [SAR's] overall condition results in some problems for her, the evidence we considered does not show that the condition causes marked and severe functional limitations."[5]

## A.    ALJ Decision

Furry requested a hearing before an administrative law judge (ALJ) on or about December 21, 2006.[6]  The hearing took place on April 18, 2008, at which Furry presented education records, medical evidence, and live testimony.[7]

SAR's education records include grade reports, standardized test scores, and teacher reports.  SAR had a composite score near

---

[3]    (R. 11 at 73.)

[4]    (R. 11 at 73-98.)

[5]    (*Id.* at 49.)

[6]    (*Id.* at 54.)

[7]    (*Id.* at 18-30.)

the 50th percentile on a March 2005 test of basic skills.[8]  SAR received an "A" in her physical education class during the 2005-2006 school year.[9]  On November 28, 2006, SAR's life science teacher indicated in a questionnaire that she had not observed any disabling physical or mental conditions in the four months that she had been SAR's teacher.[10]

SAR's medical records document many visits to physicians from 2005 through early 2007.  During these visits, SAR sought treatment for migraine headaches, recurrent boils, a rash, coughs, sore throats, gastroenteritis, diarrhea, nausea, vomiting, contusions, sore muscles, and elbow pain.[11]  On March 10, 2006, SAR saw Dr. Mark Sayes about back pain resulting from the October 2005 cheerleading injury.[12]  SAR stated that her pain was worse when walking or standing for prolonged periods of time, but better when sitting.[13]  Sayes diagnosed chronic low back pain and recommended a CT scan of SAR's spine.[14]  The CT scan was performed on March 14, 2006 and revealed moderate to moderately

---

[8]    (*Id.* at 104.)

[9]    (*Id.* at 128.)

[10]   (*Id.* at 108-15.)

[11]   (*Id.* at 169-82, 196-99, 240-62.)

[12]   (*Id.* at 251.)

[13]   (*Id.*)

[14]   (*Id.* at 164, 249-50.)

3

severe spinal stenosis at the L2-3 level and mild to moderate spondylosis at the L3-4, L4-5, and L5-S1 levels.[15]  On March 17, 2006, Sayes recommended an MRI of SAR's spine.[16]  The MRI was conducted on March 20, 2006 and revealed a bulging disc at L4-L5, mild bulging discs at T11-T12 and L3-L4, and a diffuse disc bulging at L2-L3 with significant canal stenosis.[17]

Dr. William Accousti at Children's Hospital examined SAR on March 31, 2006.  Accousti concluded that SAR was "in no acute distress" and noted that SAR moved about the examination room well and could "walk on her tiptoes and heels without difficult[y]."[18]  Accousti further explained, "[S]he can forward bend. . . . She has some pain when she hyperextends her back. . . . She has a mild discomfort right along the lower lumbar level, but this does not radiate."[19]  Accousti indicated that SAR had "normal motor and sensory testing of the lower extremities with full strength throughout.[20]  SAR was given a "lumbar corset" to wear.[21]

---

[15]   (*Id.* at 164-65, 232-34, 250.)

[16]   (*Id.* at 250.)

[17]   (*Id.* at 160, 163, 230-31, 249.)

[18]   (*Id.* at 157.)

[19]   (*Id.*)

[20]   (*Id.* at 158.)

[21]   (*Id.*)

Dr. Andrew King, also at Children's Hospital, examined SAR on April 5, 2006.  King concluded that SAR "has no neuralgic symptoms such as pins and needles" and "does not have spinal claudication."[22]  King noted that "[t]here is no nerve root tension with her sitting" and that "[a]ll reflexes are present and brisk."[23]  King explained to Furry that there was nothing to do at the time and that "[t]hese usually heal in."[24]  King also indicated that SAR was "not to do any sports or activities" and "[t]here is to be no PE at school."[25]

King saw SAR again on May 9, 2006.  King observed that SAR "still has pain in her back," but stated that "in the absence of clear stenotic symptoms, I would not recommend surgical removal of the limbus vertebra."[26]  King scheduled a follow-up appointment for six months later and stated that he would decide whether to do another CT scan or not "[a]ccording to her symptoms."[27]

At the hearing, SAR and Furry testified regarding SAR's

---

[22]   (*Id.* at 156.)

[23]   (*Id.*)

[24]   (*Id.*)

[25]   (*Id.*)

[26]   (*Id.* at 155.)

[27]   (*Id.*)

spine condition.[28]  SAR explained that she injured her back in October 2005 during cheerleading practice, and that she could not twist, pick up certain things, or move in certain ways afterward.[29]  She stated that she had recurrent back spasms[30] and took Ibuprofen for pain.[31]  SAR also stated that she was able to bathe, do her hair, dress, and go to the grocery store,[32] but was unable to help her mother in the garden as much as before or play softball.[33]  SAR testified that her back pain and migraine headaches forced her to miss "a lot" of school.[34]  She also testified that she suffered from frequent headaches and had "a bad migraine about once every month or every two months."[35]  SAR explained that she took Imitrex for the migraines but would leave school if she became nauseous and sick to her stomach.[36]

Furry testified that SAR had laminectomy and fusion surgery

---

[28]    (*Id.* at 33-46.)

[29]    (*Id.* at 38-39.)

[30]    (*Id.* at 39-40.)

[31]    (*Id.*)

[32]    (*Id.* at 36.)

[33]    (*Id.* at 39, 41-42.)

[34]    (*Id.* at 40, 45.)

[35]    (*Id.* at 41.)

[36]    (*Id.* at 36, 41.)

scheduled for July 3, 2008 at Children's Hospital.[37]  Furry
explained that SAR's spinal stenosis "is causing her problems as
she's growing" because "she's growing and getting larger and her
bones are growing, it's starting to actually compress on her."[38]
Furry also stated that the surgery was not guaranteed to stop
SAR's pain, and that the recuperative period was expected to be
three to five months.[39]  Finally, Furry testified that SAR had
missed about 20 days of school that year, with 90 percent of the
absences due to back pain.[40]

On May 29, 2008, the ALJ concluded that SAR was not disabled
within the meaning of the Social Security Act.[41]  In relevant
part, the ALJ found that SAR had a marked limitation in her
health and physical well-being,[42] but that she had a less than a
marked limitation in her ability to move about and manipulate
objects.[43]  The ALJ also found that SAR had less than marked
limitations or no limitations in other regulatory domains.[44]

---

[37]     (*Id.* at 43-44.)

[38]     (*Id.* at 44.)

[39]     (*Id.*)

[40]     (*Id.* at 45.)

[41]     (*Id.* at 18.)

[42]     (*Id.* at 29.)

[43]     (*Id.* at 28.)

[44]     (*Id.* at 25-29.)

**B.    Appeals Council Decision**

SAR requested review by the SSA Appeals Council on June 11, 2008.[45]  On June 17, 2008, Dr. King performed a L2-L3 decompression and translaminar interbody fusion on SAR.[46]  SAR submitted evidence related to her surgery and subsequent treatment to the Appeals Council on March 3, 2009.[47]  This additional evidence consists of four sets of documents:  (1) a progress note from Children's Hospital dated May 6, 2008;[48] (2) records from Children's Hospital dated June 11-21, 2008;[49] (3) Terrebonne Parish school records from July 2008 and February 2009;[50] and (4) physical therapy records from January and February 2009.[51]

The May 6, 2008 progress note from Children's Hospital includes King's observation that SAR had a "known lumbar spinal stenosis secondary to a limbus fracture" and recently had a "relapse" of severe back pain.[52]  King also observed that SAR had

---

[45]    (*Id.* at 12-14.)

[46]    (*Id.* at 270.)

[47]    (*Id.* at 9-11.)

[48]    (*Id.* at 263-64.)

[49]    (*Id.* at 265-75.)

[50]    (*Id.* at 146-53.)

[51]    (R. 12-3, 12-4.)

[52]    (R. 11 at 263.)

8

been missing "a lot" of school.[53]  He stated that there were "no nerve root symptoms" and that SAR was "standing erect."[54]  King observed that SAR had been taking Ibuprofen and reported that he placed her on Feldene, a pain reliever.[55]  He also expressed an intent to move up SAR's back surgery from July 2008 to June 2008.[56]

The Children's Hospital records indicate that SAR underwent surgery for a L2-3 limbus fracture with spinal stenosis on June 17, 2008.[57]  SAR was discharged on June 21, 2008.[58]  Her discharge summary indicates that she "began sitting up and ambulating on postoperative day three, and she has continued to improve."[59] SAR was "ambulating without any difficulty" but she was restricted upon discharge from running, jogging, aerobic activity, performing sports, and lifting greater than five pounds.[60]  The discharge summary further states that SAR was not restricted from walking, "but she is to limit the amount that she

---

[53]     (*Id.* at 263.)

[54]     (*Id.*)

[55]     (*Id.*)

[56]     (*Id.*)

[57]     (*Id.* at 270.)

[58]     (*Id.*)

[59]     (*Id.*)

[60]     (*Id.*)

walks to less than one block for approximately the next week, and we will progress her after that."[61]

The Terrebonne Parish School records state that, on July 24, 2008, Dr. Sayes recommended homebound instruction for SAR from August 2008 through May 2009 because of "spine disease."[62]  The school records reflect that SAR in fact received homebound instruction but only indicate excused absences through February 6, 2009.[63]

The physical therapy records indicate that SAR was prescribed six weeks of physical therapy on January 8, 2009 in order to strengthen her back.[64]  SAR submitted evidence of less than a month of progress notes to the Appeals Council.  At the outset of physical therapy on January 27, 2009, SAR indicated on a functional index worksheet that she could walk one quarter mile; could do her "usual work, but no more"; performed personal care with "slow concise movements due to increased symptoms"; had no trouble sleeping; and could do no recreational activities at all.[65]  She also indicated that she could drive indefinitely with slight symptoms and that she could manage light to medium weights

---

[61]   (*Id.*)

[62]   (*Id.* at 147.)

[63]   (*Id.* at 148-50.)

[64]   (R. 12-3 at 10.)

[65]   (*Id.* at 11.)

10

if they were conveniently positioned.[66]  On a separate
questionnaire, which lists twenty-four separate sentences to
describe back pain, SAR indicated, *inter alia*, that she stayed at
home most of the time; got dressed more slowly than usual; and
found it difficult to get out of a chair.[67]

At SAR's initial evaluation on January 27, 2009, SAR's
physical therapist reported that SAR was "not able to lift or
carry anything heavy."[68]  The physical therapist also observed
that SAR "can't bend from the waist without pain" and that "[s]he
has to go slow with dressing and bathing."[69]  The physical
therapist explained that SAR "is not allowed to do any
recreational activities yet" and that "[s]he can't stand or sit
for more than about 1 hour."[70]  The physical therapist observed
that SAR had "[e]xcellent rehab potential to reach the
established goals" and had recently been allowed to return to
school part time.[71]

From January 27 to February 6, 2009, SAR's physical
therapist indicated on SAR's treatment notes that SAR was "not

---

[66]    (*Id.* at 12.)

[67]    (*Id.* at 13.)

[68]    (*Id.* at 8.)

[69]    (*Id.*)

[70]    (*Id.*)

[71]    (*Id.*)

11

allowed to do any recreational activities yet."[72]  On February 9, 2009, however, SAR's physical therapist reported that SAR was making "good" progress toward established goals and "[d]id better with all exercises today."[73]  The treatment notes reflect further improvement in SAR's ability to exercise on February 11 and 13, 2009.[74]  The last treatment note, from February 18, 2009, indicates that SAR's progress toward established goals and her response to physical therapy were both "good."[75]  SAR reported "decreased pain."[76]  She could ride a recumbent bicycle, do partial sit-ups, crunches, bridges, knee to chest movements, and partial squats.[77]

The Appeals Council initially denied SAR's request for review on April 20, 2009 without considering the additional evidence.[78]  On April 28, 2009, SAR's attorney requested that the Appeals Council reopen the appeal because it had not considered or acknowledged receipt of the new evidence.[79]  On August 24,

---

[72]     (*Id.* at 23-34.)

[73]     (*Id.* at 22.)

[74]     (*Id.* at 18-20.)

[75]     (*Id.* at 15.)

[76]     (*Id.* at 14.)

[77]     (*Id.*)

[78]     (R. 11 at 5-8.)

[79]     (*Id.* at 141.)

2009, the Appeals Council set aside its initial decision in order to consider SAR's new evidence, but again denied SAR's request for review.[80]  It explained, "After considering the additional information, we found no reason under our rules to review the Administrative Law Judge's decision."[81]  The effect of the Appeals Council's determination was to make the ALJ's decision "the final decision of the Commissioner of Social Security in [this] case."[82]

C.   **Judicial Review**

Furry sought judicial review of the Commissioner's final decision on September 21, 2009.[83]  The matter was referred to a Magistrate Judge,[84] and the parties submitted cross motions for summary judgment.[85]  The Magistrate Judge issued a report and recommendation that Furry's motion be denied and that Commissioner's motion be granted because the Commissioner's decision was supported by substantial evidence.[86]  Furry filed

---

[80]   (*Id.* at 1-4.)

[81]   (*Id.* at 1.)

[82]   (*Id.*)

[83]   (R. 1.)

[84]   *See* E.D. La. L.R. 73.2E.

[85]   (R. 12, 13.)

[86]   (R. 14 at 14.)

objections to the report and recommendation on June 5, 2010, arguing that SAR's claim should be remanded to the ALJ for findings on SAR's surgery and subsequent medical treatment in light of the evidence submitted to the Appeals Council.[87]

Additionally, Furry moved for leave to file supplemental objections on August 4, 2010.[88] Furry's proposed supplemental objections would introduce a letter from Dr. Jamie Huddleston dated August 3, 2010, who treats SAR for "Migraines with Migranious Vertigo."[89] There is no indication in the record how long Huddleston has been treating SAR. Nor is there any evidence of what medications she prescribed for SAR's headaches or what medications SAR was prescribed for any other reason. Huddleston asserts that SAR's back surgery has left her with "severe pain" that "prevents her from sitting for prolonged periods."[90] Huddleston notes that it is "rather difficult" for SAR to stand for longer than 30 minutes at a time.[91] Huddleston has recommended that SAR participate in "HomeBound Schooling given her complicated problems and inability to tolerate the prolonged

---

[87]    (R. 15 at 2-3.)

[88]    (R. 16.)

[89]    (R. 16-3.)

[90]    (*Id.*)

[91]    (*Id.*)

hours."[92]  Huddleston explains that SAR "often requires rest and needs therapy which is offered during traditional school hours."[93]  She further explains that SAR "would also be limited by the need for excuses to take frequent meds and the side effects of those meds."[94]  Huddleston concludes that she does not think that SAR "will be able to participate in any occupation currently or the typical social interests of other people her age."[95]

## II.  STANDARDS

The function of this Court on judicial review under 42 U.S.C. § 405(g) is limited to determining whether there is substantial evidence in the record to support the Commissioner's final decision, and whether the Commissioner applied the appropriate legal standards in reaching the decision.  *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  The Commissioner's final decision must be upheld if it is supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, less than a preponderance, and such that a

---

[92]    (*Id.*)

[93]    (*Id.*)

[94]    (*Id.*)

[95]    (*Id.*)

15

reasonable mind might accept a conclusion based thereon.  *See Spellman*, 1 F.3d at 360.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *See Martinez*, 64 F.3d at 173; *Spellman*, 1 F.3d at 360.  Conflicts in evidence are for the Commissioner to resolve, not the courts. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

## III. DISCUSSION

As an adolescent, SAR is entitled to SSI benefits if she suffers from "marked" limitations in at least two of six regulatory domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  The six domains are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well being.  *Id.* § 416.926a(b)(1).  The Commissioner provides the following description of what constitutes a "marked" limitation:

> We will find that you have a "marked" limitation in a domain
> when your impairment(s) interferes seriously with your
> ability to independently initiate, sustain, or complete
> activities.  Your day-to-day functioning may be seriously

16

> limited when your impairment(s) limits only one activity or
> when the interactive and cumulative effects of your
> impairment(s) limit several activities.  "Marked" limitation
> also means a limitation that is "more than moderate" but
> "less than extreme."  It is the equivalent of the
> functioning we would expect to find on standardized testing
> with scores that are at least two, but less than three,
> standard deviations below the mean.

*Id.* § 416.296a(e)(2).  Additionally, to be considered disabled,

an impairment "must be expected to last for a continuous period

of at least 12 months."  *Id.* §§ 416.906, 416.909.

The Commissioner found that SAR had a marked limitation in

only her "health and physical well-being" and thus denied SAR's

claim for SSI benefits.[96]  Furry contends that SAR also has a

marked limitation in "moving about and manipulating objects."[97]

The relevant regulation provides the following "[a]ge group

descriptor" with regard to that regulatory domain:

> As an adolescent, you should be able to use your motor
> skills freely to get about your school, the neighborhood,
> and the community.  You should be able to participate in a
> full range of individual and group physical fitness
> activities.  You should show mature skills in activities
> requiring eye-hand coordination, and should have the fine
> motor skills needed to write efficiently or type on a
> keyboard.

*Id.* § 416.926a(b)(1)(iv).  Examples of "limited" functioning in

moving about and manipulating objects may include muscle

weakness, joint stiffness, or sensory loss that interferes with

motor activities (*e.g.*, unintentionally dropping things);

---

[96]   (R. 11-2 at 1, 29-30.)

[97]   (R. 15 at 2-3.)

17

difficulty climbing stairs; difficulty coordinating gross motor movements (*e.g.*, bending, kneeling, crawling, running, jumping rope, or riding a bike); difficulty with sequencing hand or finger movements; difficulty with fine motor movements; or poor eye-hand coordination when using a pencil or scissors. *Id.* § 416.926a(j)(3)(I)-(vi). These examples of functional limitations, however, do not necessarily describe "marked" or "extreme" limitations. *Id.* § 416.926a(j)(3).

Furry objects to the Magistrate Judge's recommendation that the Commissioner's motion for summary judgment be granted and her motion for summary judgment be denied.[98] Furry contends that the Court should remand this case to the ALJ to consider the evidence on her back surgery and physical therapy that was submitted to the Appeals Council, as well as the letter from Dr. Huddleston that she obtained after the Magistrate Judge's decision.[99] In support of her argument, Furry relies on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), in which the plaintiff provided new evidence that became available only after the Appeals Council had declined to review the decision of the ALJ. *Id.* at 554. Granting the plaintiff's request to remand to the ALJ for consideration of the new evidence, the Fifth Circuit explained that a case must be remanded to the "administrative level" when

---

[98]    (R. 15.)

[99]    (*Id.* at 2-3.)

new evidence (1) relates to the time period for which disability benefits were denied and (2) there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Id.* at 555.

In this case, however, the Appeals Council considered the additional evidence before declining to review the ALJ's decision.[100]  Accordingly, the Commissioner's final decision includes the Appeals Council's determination that the ALJ's findings remained correct in light of the additional evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Because this Court reviews the final decision of the Commissioner, it need not remand for the ALJ to consider in the first instance the additional evidence provided to the Appeals Council before proceeding with judicial review.  *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) (rejecting plaintiff's argument that the ALJ's decision must be reversed because additional medical records submitted to the Appeals Council were not before the ALJ when a decision was made and did not provide a basis for changing the ALJ's decision).  Instead, the Court reviews both the evidence before the ALJ and the Appeals Council for substantial evidence. *Higginbotham*, 405 F.3d at 337-38.

For the following reasons, the Court finds that, considering the evidence SAR provided to both the ALJ and the Appeals

---

[100]    (R. 11-2 at 1.)

Council, substantial evidence supports the Commissioner's final decision.  Further, the Court finds that the evidence provided in Furry's supplemental objections does not justify remand.

## A.   Evidence before the ALJ

In March 2006, Dr. Accousti observed that SAR moved about "quite well," could walk on her tiptoes and heels "without difficult[y]," could forward bend, and had only "some pain" when she hyperextended her back.[101]  Accousti also observed that SAR had "normal motor and sensory testing" of her lower extremities and "full strength throughout."[102]  Accousti's observations suggest that SAR would not have had difficulty climbing stairs or coordinating most gross motor movements.  In April 2006, Dr. King restricted SAR from participating in sports and physical education at school but observed that SAR's reflexes were "present and brisk" and concluded "that there was nothing to do at this stage."[103]  He explained, "[t]hese usually heal in."[104]  In May 2006, King concluded that surgery was not appropriate and scheduled a follow-up appointment after six months.[105]  King's

---

[101]   (*Id.* at 157-58.)

[102]   (*Id.* at 157.)

[103]   (*Id.*)

[104]   (*Id.* at 156.)

[105]   (*Id.* at 155.)

conclusions suggest that SAR's muscle weakness and joint stiffness were temporary and did not significantly interfere with her motor activities or fine motor movements.

Also in May 2006, SAR received passing grades in school, and in November 2006, SAR's life science teacher indicated that SAR did not demonstrate disabling physical or mental conditions in the four months that she had been SAR's teacher.[106] SAR's education records indicate that SAR's limitations did not prevent her from freely getting about her school or community. In sum, as of the end of 2006, SAR's ability to move about and manipulate objects may have been limited, but the limitations were moderate.

There is no evidence that SAR was treated for a back condition in 2007. SAR has presented physician notes from January and February 2007, but these visits do not relate to SAR's back pain. The notes indicate that SAR broke a finger on or around February 7, 2007 but do not suggest that the injury was expected to place a long-term limitation on SAR's ability to manipulate objects.[107]

SAR's own testimony suggests that she was able to move about and manipulate objects as of April 2008. SAR stated that she was able to bathe, dress, shop, garden, care for her dog, and help

---

[106]   (*Id.* at 108-15.)

[107]   (*Id.* at 197-98, 223.)

her mother clean around the house.[108]   Although SAR testified that
her pain prevented her from playing softball or participating in
physical education class,[109] these limitations do not demonstrate
that SAR was unable to participate in other physical fitness
activities.   Considering the evidence that was before to the ALJ
at the time of the hearing, the Court finds that substantial
evidence supports the conclusion that SAR did not suffer from a
"marked" limitation in moving about and manipulating objects.

## B.   Evidence before the Appeals Council

Dr. King's May 6, 2008 progress note from Children's
Hospital states that SAR had a "known lumbar spinal stenosis
secondary to a limbus fracture" and recently had a "relapse" of
severe back pain.[110]   King noted that SAR had missed "a lot" of
school and indicated an intent to move SAR's scheduled surgery
from July 2008 to June 2008.[111]   King also prescribed pain
medication for SAR.[112]

According to the Children's Hospital records, SAR underwent
surgery for a L2-3 limbus fracture with spinal stenosis on June

---

[108]   (*Id.* at 36.)

[109]   (*Id.* at 38-39.)

[110]   (*Id.* at 263.)

[111]   (*Id.*)

[112]   (*Id.*)

17, 2008.[113]  SAR was discharged on June 21, 2008.  Her discharge summary indicates that she "began sitting up and ambulating on postoperative day three, and she has continued to improve."[114] SAR was "ambulating without any difficulty" but she was restricted from running, jogging, aerobic activity, performing sports and lifting greater than five pounds.[115]  The discharge summary further states that SAR was not restricted from walking, "but she is to limit the amount that she walks to less than one block for approximately the next week, and we will progress her after that."[116]

Six months later, SAR began physical therapy.  On her functional index worksheet, dated January 27, 2009, SAR noted some limitations, but indicated that she could walk up to a quarter mile and that she could do her usual work.[117]  SAR had no trouble sleeping and could engage in personal care with slow, concise movements.[118]  She could also drive unlimited distances with only slight symptoms and could manage light to medium

---

[113]   (R. 11-10 at 30.)

[114]   (*Id.*)

[115]   (*Id.*)

[116]   (*Id.*)

[117]   (R. 12-3 at 11.)

[118]   (*Id.*)

weights if conveniently positioned.[119]  With regard to her back
and lower extremities, SAR indicated that she could stand for up
to 30 minutes, squat fully without the use of her arms for
support, and sit in her "favorite chair" indefinitely.[120]  SAR's
responses support the Commissioner's decision that SAR does not
suffer from a "marked" limitation in moving about and
manipulating objects.  As noted, the Commissioner describes a
"marked" limitation as the "equivalent of the functioning we
would expect to find on standardized testing scores that are at
least two, but less than three, standard deviations below the
mean."  20 C.F.R. § 416.926a(e)(2).  With the exception of the
response regarding recreation and sports, all of SAR's responses
fell in the upper to middle range of the responses listed on the
functional index worksheet.[121]

    On January 27, 2009, SAR's physical therapist described her
as having excellent rehabilitation potential to reach the
established goals.[122]  Although the physical therapist initially
indicated that SAR was "not allowed to do any recreational
activities yet," by February 9, 2009, SAR's treatment notes
indicate that SAR was making "good" progress toward established

---

[119]    (*Id.* at 12.)

[120]    (*Id.*)

[121]    (*Id.* at 11-12.)

[122]    (*Id.* at 8.)

goals, reported decreased pain, and "did better with all of her exercises."[123]  SAR's physical therapist reported additional improvement in SAR's ability to exercise on February 11 and 13, 2009.[124]  And the final treatment note on February 18, 2009 reflects that SAR suffered from decreased pain.[125]  SAR's physical therapy records indicate that while SAR experienced post-operative pain and an inability to engage in exercise at the outset of physical therapy, SAR's condition improved following the surgery, and by February 18, 2009, she could ride a recumbent bicycle, do partial sit-ups, crunches, bridges, knee to chest movements, and partial squats.[126]  This improvement supports the Commissioner's determination that SAR did not suffer from a "marked" limitation in moving about and manipulating objects.

The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Spellman*, 1 F.3d at 360. Because a reasonable mind might accept the conclusion that SAR does not suffer from a "marked" limitation in moving about and manipulating objects based on her answers to the functional index worksheet and improvement through physical therapy, there is substantial evidence to support the Commissioner's decision.

---

[123]    (*Id.* at 22-23.)

[124]    (*Id.* at 18-21.)

[125]    (*Id.* at 14.)

[126]    (*Id.*)

### 3.    SAR's Supplemental Objections

On August 4, 2010, Furry moved for leave to file supplemental objections to the Magistrate Judge's report and recommendation.[127]  As part of that motion, Furry submitted to the Court a letter from Dr. Jamie Huddleston dated August 3, 2010. Huddleston explains that she treats SAR for Migraines with Migranious Vertigo, which she describes as a "fairly disabling condition which causes her to take frequent as needed medications, most of which can be sedating."[128]  Huddleston also explains that, following SAR's back surgery, SAR "is left with severe pain . . . which prevents her from sitting for prolonged periods" and that it is "rather difficult" for SAR to stand for longer than 30 minutes at a time.[129]  Huddleston recommended "HomeBound Schooling" for SAR because she does not believe SAR would be successful with traditional school "given her complicated problems and inability to tolerate the prolonged hours."[130]  Furry contends that the Court should remand the case for the Commissioner to consider Huddleston's letter.[131]

---

[127]    (R. 16.)

[128]    (R. 16-3.)

[129]    (*Id.*)

[130]    (*Id.*)

[131]    (R. 16-2.)

Under 42 U.S.C. § 405(g), the Court may remand in order for additional evidence to be taken before the Commissioner only upon a showing that there is new, material evidence and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.  Reviewing the materiality of new evidence requires the Court to make two separate inquiries:  (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Commissioner's decision.  *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003).

The Court finds that there is not a reasonable probability that Huddleston's letter would change the outcome of the Commissioner's decision.  Because Huddleston does not provide objective medical support for her conclusions, but instead appears to base them on SAR's subjective reports of pain, her opinion is not entitled to controlling weight.  20 C.F.R. § 416.927(d)(2).  Moreover, because there is no indication of how long Huddleston has been treating SAR, and because she treats SAR for migraines, as opposed to her back injury, the Commissioner would not give Huddleston's opinion substantial weight if the Court were to remand the case.  *See* 20 C.F.R. § 416.927(d)(2)(i)-(ii), (5).

Further, it is unclear whether Huddleston's recommendation

for home schooling is based on SAR's back pain, migraines, or both.  To the degree Huddleston's conclusions are based on SAR's migraines, they are not relevant to the determination of whether SAR has a "marked" limitation in moving about and manipulating objects.  Finally, although Huddleston states that she does not think SAR "will be able to participate in any occupation currently," the Commissioner is responsible for making ultimate disability determinations and does not give any special significance to such determinations from medical sources.  *See* 20 C.F.R. § 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Because there is not a reasonable probability that Huddleston's letter would change the outcome of the Commissioner's decision, the additional evidence submitted to the Court is not material and remand is not appropriate.  *See* 42 U.S.C. § 405(g); *Castillo*, 325 F.3d at 551-52 (declining to remand plaintiff's case because the newly submitted evidence was not material).

## IV.  CONCLUSION

For foregoing reasons, the report and recommendation of the Magistrate Judge is AFFIRMED.

New Orleans, Louisiana, this 8th day of October, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE